RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

LATAWYNE OSBORNE,
　　　　　　　　*Defendant-Appellant.*

No. 09-5276

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 06-00110-001—Thomas A. Varlan, District Judge.

Decided and Filed: March 7, 2012

Before: MARTIN, SUTTON and BALDOCK, Circuit Judges.[*]

_____

## COUNSEL

**ON BRIEF:** Christopher C. Bazeley, Cincinnati, Ohio, for Appellant. David P. Lewen, Jr., Zachary C. Bolitho, ASSISTANT UNITED STATES ATTORNEYS, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. A jury convicted Latawyne Osborne on drug and firearms charges in connection with a shooting near a Knoxville elementary school. He claims the district court failed (1) to require the jury to make a finding on an element of two of the charges against him and (2) to suppress some of the evidence used against him. We affirm.

_____

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

I.

On July 27, 2006, someone in Knoxville, Tennessee called 911 to report that a person in a gold Chevy Impala was shooting at a white Cadillac near 1826 Moses Avenue. When the police responded to the call, they spotted a gold Impala turning onto Moses Avenue. The car pulled into a driveway, and the police parked behind it. Osborne exited the Impala and, after briefly resisting, the police handcuffed him. After they patted him down and discovered no weapons, they entered his vehicle to retrieve his identification from the center console. A records check turned up an outstanding warrant. The police arrested Osborne, and searched him and the car again. This time, they found crack cocaine on his body as well as powder cocaine and two firearms under the front seat of the car.

A federal grand jury charged him with two counts of distributing cocaine within 1000 feet of a school, one for crack and one for powder. 21 U.S.C. § 860. It also charged him with one count of possessing a firearm in furtherance of a drug-trafficking crime. 18 U.S.C. § 924(c). The jury convicted him on all charges. The district court sentenced him to 78 months on each of the drug charges and 120 months on the gun charge, all to be served concurrently.

II.

Osborne raises two essential claims on appeal: (1) the district court should have instructed the jury that the proximity-to-a-school component of § 860 is an element of the offense; and (2) the district court should have suppressed the evidence discovered in his car.

A.

Osborne's first argument must overcome a significant obstacle: He never objected to the court's instruction on this point, limiting review to plain error. *Johnson v. United States*, 520 U.S. 461, 465–66 (1997). He thus must show that the instruction was (1) error (2) that was plain, (3) that affected substantial rights and (4) that, if uncorrected, would "seriously affect[] the fairness, integrity or public reputation of

judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).  That is not easy.  While he can meet the first requirement (and perhaps others), he cannot meet the fourth.

On the first point, the question at hand is one of legislative meaning:  Does the proximity-to-a-school component of § 860(a) of Title 21 establish an element of the offense (for the jury to decide) or a sentencing factor (for the judge to decide)?  *See United States v. O'Brien*, 560 U.S. __, 130 S. Ct. 2169, 2175 (2010).  Here is what the statute says:

> [a]ny person who violates [21 U.S.C. §] 841(a)(1) . . . or [21 U.S.C. §] 856 . . . by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, . . . a public or private elementary, vocational, or secondary school . . . is . . . subject to (1) twice the maximum punishment authorized by [21 U.S.C. §] 841(b).

As the government sees it, § 860(a) describes a sentencing enhancement for violations of § 841(a)(1) or § 856.  On that reading, a jury need not determine whether the offense occurred within 1000 feet of a school.  The district court would resolve that question at sentencing by a preponderance of the evidence if the jury convicted the defendant of any of the § 841 or § 856 offenses.  As Osborne sees it, § 860(a) describes a discrete offense, separate from (but including) the offenses described in § 841 or § 856.  On that reading, a court could sentence a defendant under § 860(a) only if a jury first convicted him under it and thus only if the jury found that (1) his conduct satisfied all of the elements of § 841 or § 856, and (2) that he committed the drug offense within 1000 feet of a school.

Osborne has the better of this argument.  *First*, other subsections of § 860 show that Congress established a distinct offense, not a sentencing enhancement, under § 860(a).  Subsection (b) speaks of a "prior conviction under subsection (a) of this section."  21 U.S.C. § 860(b).  Subsection (c) provides enhanced penalties for anyone over 21 who "employs . . . a person under 18 years of age to violate this section" or to "avoid[] detection or apprehension for any offense under this section."  *Id.* § 860(c).

And subsection (d) provides that "[a]n individual convicted under this section shall not be eligible for parole" until he serves the mandatory minimum. *Id.* § 860(d). One does not normally speak of "violating" a sentencing enhancement or of being "convicted" under one. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (fact that Congress referred to "violations" of one subsection of 8 U.S.C. § 1326 but not the other supports inference that only the former was intended to be a distinct crime); *id.* at 269–70 (Scalia, J., dissenting) (fact that Congress inserted a cross-reference in a later statute to "offenses" under § 1326(b) suggests that § 1326(b) creates a distinct crime). That Congress thought § 860 could be "violat[ed]" and that someone could be "convicted under" it shows that § 860(a) codifies a discrete crime. *Compare, e.g.*, 21 U.S.C. § 841(b) ("[A]ny person who *violates* subsection (a) of this section shall be sentenced as follows . . . .").

*Second*, the effects and subject matter of the proximity finding are the sort traditionally associated with elements of a crime. The effects are significant. A proximity finding doubles the range of punishment, suggesting Congress would provide "the process safeguards that elements of an offense bring with them for a defendant's benefit." *Jones v. United States*, 526 U.S. 227, 233 (1999). In holding that carjacking that caused a serious injury was a distinct offense from other types of carjackings, *Jones* called it "at best questionable" that Congress would have left a finding that increased the sentencing range by 66% to the judge. *Id.* That is more true here, where the finding generates a 100% increase in the sentencing range.

Not only is the effect of the finding consistent with an element of a crime, as opposed to a sentencing factor, so too is the nature of the effect. The finding extends rather than constrains the district court's sentencing discretion. Contrast this "with traditional understandings about how sentencing factors operate; [sentencing factors generally] constrain, rather than extend, the sentencing judge's discretion." *Harris v. United States*, 536 U.S. 545, 554 (2002). The subject matter of the finding points in the same direction. Whereas "[s]entencing factors traditionally involve characteristics of the offender . . .[, c]haracteristics of the offense itself are traditionally treated as elements

. . . ." *O'Brien*, 130 S. Ct. at 2176; *but see Harris*, 536 U.S. at 556 (whether a firearm was brandished during the underlying crime was a sentencing factor).

*Third*, constitutional-avoidance principles support this reading, as a contrary interpretation would lead to frequent violations of the Sixth Amendment. "[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). Under § 860, proximity to a school does just that. If a factfinder determines that a defendant violated § 841(a)(1) *within 1000 feet of a school*, that finding "increases the maximum penalty" by a factor of two.

True, *this* sentence did not violate *Apprendi*. Osborne's sentence fell within the range already provided by § 841(b)(1), and "*Apprendi* is not triggered where the defendant receives a term of imprisonment within the statutory maximum that would have applied even without the enhancing factor." *United States v. Burns*, 298 F.3d 523, 544 (6th Cir. 2002). But that shows only that the district court chose not to utilize the discretion § 860 gave it; the court's sentencing decision tells us nothing about what Congress meant when it extended that discretion. It is enough for our purposes that many applications of § 860 *would* produce constitutional violations. "If one of [two plausible statutory constructions] would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the court." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005). In this instance, if we treated § 860 as a judge-made sentencing enhancement, it would produce a constitutional violation every time the judge sentenced the defendant within the new range created by § 860. Courts should not lightly presume that Congress wrote § 860 to give sentencing judges an illusory range of statutorily available but constitutionally impermissible prison terms. *See Jones*, 526 U.S. at 239–252.

*Fourth*, every circuit court to address the issue (and there are many) has reached the same conclusion. *See United States v. Flaharty*, 295 F.3d 182, 193 (2d Cir. 2002); *United States v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996); *United States v. Chandler*, 125 F.3d 892, 896 (5th Cir. 1997); *United States v. Gonzalez-Rodriguez*, 239 F.3d 948,

952–53 (8th Cir. 2001); *United States v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir. 2000); *United States v. Smith*, 13 F.3d 380, 382 (10th Cir. 1993); *United States v. Anderson*, 200 F.3d 1344, 1347 (11th Cir. 2000); *see also United States v. Holland*, 810 F.2d 1215, 1221 (D.C. Cir. 1987) (describing earlier statute as a "separate yet related offense" to § 841(a)); *United States v. Parker*, 30 F.3d 542, 553 (4th Cir. 1994) (describing § 841(a) as a lesser included offense of § 860(a)).  This conclusion also is consistent with *United States v. Martinez*, 430 F.3d 317, 339 (6th Cir. 2005), in which the defendant claimed a variance between the indictment and conviction and in which the government conceded there (though not here) that "21 U.S.C. § 860 . . . is a separate offense with enhanced penalties."

All of this establishes that the district court erred—that the court should have instructed the jury to find whether Osborne committed the offense within 1000 feet of a school.  But it does not establish that he meets the other requirements of plain-error review, and in particular it does not establish that the error, if uncorrected, would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

*Johnson v. United States*, 520 U.S. 461, 465–66 (1997), faced a similar situation, one where the district court also failed to instruct the jury about an element of the offense.  Although the error was plain, the Court held it did not merit reversal because the issue was "essentially uncontroverted at trial and has remained so on appeal." *Id.* at 470.  The failure of the jury to find an undisputed fact, the Court held, did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings"; to the contrary, only "the reversal of a conviction such as this . . . would have that effect." *Id.*

What was true in *Johnson* is true here, indeed more so.  In *Johnson*, defense counsel at least argued that the element at issue had "been insufficiently proven and that the [district c]ourt ought to grant a judgment of acquittal." *Id.* at 470 n.2.  In this case, counsel did not even say that.  If the element was "essentially uncontroverted" in *Johnson,* the proximity element was *entirely* uncontroverted here.  Two officers testified that Osborne was within 1000 feet of Maynard Elementary School at the time of the

arrest, and the government introduced a map showing the location of the arrest and the school. Osborne's attorney did not cross-examine them on the point, and he made clear during his opening statement that Osborne was "willing to accept prison" on the drug charges, as opposed to the challenged firearm-possession charge. R. 182 at 65.

In view of the utter vacuum of evidence that the government did not satisfy the proximity element, the district court's finding at sentencing that "the offenses [occurred] within a thousand feet of a public school," R. 181 at 53, confirms that "[n]o miscarriage of justice will result here if we do not notice the error, and we decline to do so." *Johnson*, 520 U.S. at 470. No plain error occurred.

## B.

Osborne argues that the district court should have suppressed the evidence seized by the police during the search of his car. As Osborne concedes, however, his trial counsel failed to object to the magistrate's recommendation that the district court deny his motion to suppress. Br. at 20. That failing prompted the district court to conclude that Osborne forfeited any objection to the recommendation and to deny his motion to suppress.

This forfeiture rule, however, is not absolute. We will look past it if the "error is so egregious that failure to permit appellate review would work a miscarriage of justice." *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). No such error occurred here. Even assuming that the initial retrieval of Osborne's identification from his vehicle was unconstitutional—a point we need not decide—our decision in *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005), held that courts generally should not suppress such identifications, even after an unconstitutional search. The police thus permissibly used Osborne's identity to perform a records check, and once they discovered the outstanding warrant for Osborne's arrest they could justifiably arrest him. The more thorough (and productive) searches of Osborne and his car were incidental to that arrest, making them constitutional under existing precedent at the time they were performed. *See Thornton v. United States*, 541 U.S. 615, 621 (2004).

Nearly three years after this search (and several months after Osborne's conviction), the Supreme Court held that a search of a vehicle incident to arrest is unconstitutional unless the arrestee has access to the passenger compartment. *Arizona v. Gant*, 556 U.S. 332, 343 (2009). Because Osborne's case was pending on direct review when the Court decided *Gant*, it applies: The search of Osborne's car incident to his arrest was unconstitutional. *See Davis v. United States*, 564 U.S. __, 131 S. Ct. 2419, 2430 (2011). But it does not follow that the products of that search should be suppressed. The key reason to exclude evidence gathered in violation of the Fourth Amendment is to prevent future constitutional violations. *Id.* at 2426. Yet when police "compl[y] with binding precedent" at the time they perform a search, this deterrence rationale melts away. *Id.* at 2428. That is just what happened here. The police followed the *Thorton/Belton* rule at the time of the search, and *Davis* accordingly precludes suppressing evidence uncovered during it. *Id.*

That leaves three points. Because the district court permissibly admitted the evidence seized from Osborne's car, his ineffective-assistance argument on this score necessarily fails. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *see also United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000) (court may review ineffectiveness claims on direct review where record is sufficiently clear). And precedent forecloses Osborne's claims that the district court should have let him argue to the jury that he (1) possessed the firearms for self-defense or due to intimidation and (2) did not intend to use them. *See Dean v. United States,* 556 U.S. 568, 129 S. Ct. 1849, 1856 (2009); *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991).

III.

For these reasons, we affirm.